FOR PUBLICATION

|  |  |
|---|---|
| UNITED STATES MANASQUANRUPTCY COURT <br> DISTRICT OF NEW JERSEY <br> Caption in Compliance with D.N.J. LBR 9004-2(c) <br><br><br> In Re: LYNN Z. SMITH, <br><br>       Debtor. | Case No. 17-34862 (MBK) <br><br> Chapter 7 |
| ANDREA DOBIN, Chapter 7 Trustee, <br><br>       Plaintiff, <br><br>       v. <br><br> SHAUN GOLDEN, Sheriff of Monmouth County, and MANASQUAN SAVINGS BANK, <br><br>       Defendant. | Adv. Pro. No. 18-01531 (MBK) |

Andrea Dobin
McManimon Scotland & Baumann, LLC
427 Riverview Plaza
Trenton, NJ 08611
*The Chapter 7 Trustee*

Ross J. Switkes
McManimon Scotland & Baumann, LLC
427 Riverview Plaza
Trenton, NJ 08611
*Attorney for the Chapter 7 Trustee*

Lori Reynolds
O'Donnell McCord, P.C.
15 Mt. Kemble Avenue
Morristown, NJ 07960
*Attorney for the Sheriff of Monmouth County*

Carol L. Knowlton
Gorski & Knowlton PC
311 Whitehorse Avenue
Suite A
Hamilton, NJ 08610
*Attorney for Manasquan Savings Bank*

**MEMORANDUM DECISION**

This matter comes before the Court upon the complaint (the "Complaint") filed by Andrea Dobin, chapter 7 trustee (the "Trustee"), against defendants Shaun Golden, Sheriff of Monmouth County (the "Sheriff"), and Manasquan Savings Bank ("Manasquan") (collectively "Defendants"). The Complaint objects to the Sherriff's asserted commission on the sale price of Lynn Z. Smith's (the "Debtor's") former residence at 409 Saint Clair Avenue, Spring Lake, NJ 07762 (the "Property"), and to Manasquan's claim for reimbursement to the extent it is held liable for payment. The Court conducted a hearing on this matter on February 27, 2019. The Court has accepted and reviewed all submissions submitted by the Trustee, Lori D. Reynolds ("Ms. Reynolds"), counsel for the Sheriff, and Carol L. Knowlton ("Ms. Knowlton"), counsel for Manasquan. For the reasons expressed below, the Court grants judgment in favor of the Defendants. The Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[1]

### I.    Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. § § 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all Bankruptcy cases to the Bankruptcy court. This matter is a core

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), (K) & (O). Venue is proper in this Court pursuant to 28 U.S.C. § § 1408 and 1409.

## II. Background and Procedural History

On January 4, 2017, Manasquan obtained a final judgment of foreclosure on the Property in the aggregate amount of $307,632.33, which included costs and counsel fees plus interest. A writ of execution authorizing the sale of the Property was issued and sent to the Sheriff on March 8, 2017. A sale of the Property was initially schedule by the Sherriff for June 19, 2017. The sale was postponed on numerous occasions for various reasons. On December 11, 2017, the Debtor filed a voluntary petition under chapter 13 of title 11 of the United States Code, 11 U.S.C. § § 101, et. seq. On January 3, 2018, the Court entered an Order converting the Debtor's chapter 13 case to one under chapter 7.[2] On May 24, 2018, the Court entered an Order Approving Bidding Procedures and at 2:00 p.m. on July 17, 2018, the Trustee conducted an in court auction sale of the Property. On July 26, 2018, the Court entered an order approving the sale of the Property for $1,015,000 and directed the Trustee to pay Manasquan the undisputed amount of $335,232.90, plus accrued interest, at the time of closing. On November 1, 2018, the Trustee consummated the sale of the Property. At closing, the purchaser's title company disbursed $337,802.96 to Manasquan. The Sheriff has asserted that he is entitled to a statutory sheriff's commission based upon on the sale price of the Property. The Trustee commenced this

---

[2] The tortuous history of the Debtor's and her spouse's efforts to fend off Manasquan's foreclosure efforts through state trial and appellate courts, multiple bankruptcy filings and scores of appeals in the federal and state courts are not relevant to the discrete issues presented in this adversary proceeding. As such, the Court will not detail these efforts but refer parties to a summary provided by the Third Circuit in its non-precedential opinion dated December 17, 2018. *In re Smith*, No. 18-3000, 2018 WL 6617891, at *1 (3d Cir. Dec. 17, 2018).

adversary proceeding in which she objects to the requested commission by filing and serving a Complaint on October 23, 2018. On January 8, 2019, counsel for the Sherriff filed a motion to dismiss the Trustee's adversary Complaint, or, in the alternative, for summary judgment. Counsel for Manasquan filed an answer to the Complaint on January 9, 2019 and the Trustee filed a cross motion for summary judgment on February 4, 2019. On February 7, 2019, the Sheriff filed a Motion to Dismiss the Adversary Proceeding, which is perhaps more accurately characterized as either a cross motion, or a submission in support of his original motion. A hearing was held on February 27, 2019. All parties have agreed that the Court should rule on the competing submissions as cross motions for summary judgment on all counts.

### III.    Summary of Issues

This case centers on whether the Sheriff is entitled to receive a commission for his efforts in the foreclosure process, notwithstanding that those efforts were interrupted when the Debtor filed for bankruptcy, and that the foreclosure judgement was ultimately satisfied from proceeds of an auction sale conducted by the Trustee. If ruling in the affirmative, the Court must then determine the amount of the commission to which the Sheriff is entitled, and whether the bankruptcy estate or Manasquan is responsible for payment.

The Trustee seeks to have the commission denied in its entirety. In support of this position, the Trustee first asserts that a sale by a bankruptcy trustee is outside the purview of N.J. STAT. ANN. 22A:4-8, and should not be classified as a "settlement," as such would contravene traditional notions of a "settlement." Second, the Trustee contends the state statute is preempted by the Bankruptcy Code, as it is in direct conflict with the objectives underlying bankruptcy law

4

– to provide an equitable distribution of the debtor's assets among her creditors. Finally, the Trustee argues in the event the Court is inclined to award a commission, that such commission be calculated on Manasquan's recovery (*i.e.* the foreclosure judgment), rather than the price garnered at auction.[3]

The Sheriff argues that the sale constitutes a settlement within the meaning of the statute because the foreclosure judgment was satisfied after a writ of execution had been issued. Therefore, he maintains, he is entitled to the statutorily mandated commission provided for in N.J. STAT. ANN. 22A:4-8. Additionally, the Sheriff proffers two arguments against preemption. First, he argues no Congressional intent to preempt can be inferred because there is nothing in the bankruptcy code to indicate a Congressional intent to override the settlement of a writ of execution. Second, he contends that the state statute does not conflict with federal law because it creates no impediment to the Trustee's ability to administer the bankruptcy estate in harmony with the bankruptcy code.  Manasquan agrees with the Sheriff's position and points out that the Trustee's argument – premised on the "merger doctrine"[4] – is erroneous because the Sheriff's commission is not based on the mortgage documents or § 506(b), but rather on New Jersey statute, case law and custom.

---

[3] Initially, there was a dispute as to whether – in the event a commission is awarded – it should be added to the Bank's allowed claim and paid from the bankruptcy estate, or whether Manasquan should bear the cost. During oral argument, the Court queried whether the Sheriff's commission would fall within the award of "costs" included in the January 4, 2017 foreclosure judgment. In this regard, N.J. STAT. ANN. 22A: 2-8 provides that a party awarded costs may include "sheriff's fees for service of process or other mandate or proceeding." After a review of relevant authority, the Trustee has since agreed to pay any commission out of estate funds.

[4] The "merger doctrine" is the legal principle that a judgment settles everything involved in the right to recover – all matters that were raised, and all those that might have been asserted. *In re Stendardo*, 991 F.2d 1089, 1094–95 (3d Cir. 1993), *as amended* (June 21, 1993).

The three issues before this Court are: (1) whether a sale conducted by a chapter 7 trustee constitutes a "settlement" so as to warrant the payment of a statutory sheriff's commission; (2) to the extent the Sheriff is entitled to any commission, whether it should be calculated based on the foreclosure judgment amount or the sale price; and (3) whether the commission is to be paid from estate funds or deducted from the Manasquan's foreclosure judgment amount.

### IV.    Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). As the Supreme Court has indicated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (citing FED. R. CIV. P. 1). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir. 2001) (citing *Celotex Corp.,* 477 U.S. at 323. In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Disputed material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine when it is "triable," that is, when reasonable minds could

disagree on the result. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citations omitted).

"Once the moving party establishes the absence of a genuine dispute of material fact, however, the burden shifts to the non-moving party to 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *In re Moran-Hernandez*, 544 B.R. 796, 800 (Bankr. D.N.J. 2016) (quoting *Matsushita,* 475 U.S. at 586). A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. FED. R. CIV. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). *See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3d Cir. 1982); *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. *Liberty Lobby, Inc., supra,* 477 U.S. at 249–250. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587.

### V.     Discussion

For the reasons set forth in detail below, the Court makes the following determinations. An auction or private sale performed by a chapter 7 trustee, subsequent to the scheduling of a foreclosure sale by a sheriff, constitutes a settlement within the meaning of N.J. STAT. ANN. 22A:4-

7

8. The Sheriff is entitled to receive one-half of the statutory commission pursuant to the plain language of the statute. The commission shall be calculated based on the amount of the foreclosure judgment and paid from bankruptcy estate funds as part of the satisfaction of the secured creditor's claim.[5]

A sheriff's right to compensation from execution sale proceeds is governed by N.J. STAT. ANN. 22A:4-8, which provides the following:

> When a sale is made by virtue of an execution the sheriff shall be entitled to charge the following fees: On all sums not exceeding $5,000.00, 6%; on all sums exceeding $5,000.00 on such excess, 4%; the minimum fee to be charged for a sale by virtue of an execution, $50.00.
>
> . . .
>
> When the execution is settled without actual sale and such settlement is made manifest to the officer, the officer shall receive ½ of the amount of percentage allowed herein in case of sale.

"New Jersey case law is well settled where the parties to a foreclosure proceeding resolve the matter obviating the need for a sheriff's sale, then the sheriff is entitled to one-half commission for his efforts to secure the property." *In re Jones*, No. 06-16416, 2008 WL 3833425, at *2 (Bankr. D.N.J. Aug. 13, 2008) (citing *Sturges v. Lackawanna & W.R. Co.*, 27 N.J.L. 424, 426 (Sup. Ct. 1859)).

> It is of no consequence to the sheriff how the matter is arranged between the plaintiff and the defendant. If anything is done between them, by which a sale is rendered unnecessary, that must be considered a settlement within the meaning of the act. The execution is then settled without a sale; its operation is suspended by the act of the parties; the sheriff can proceed upon it no further, unless it may be to

---

[5] It should go without saying that if the sale does not produce sufficient funds to satisfy the secured claim, including the applicable sheriff's commission, the Trustee should not proceed with the sale and should abandon the estate's interest.

8

make his own costs; and he becomes entitled to the allowance provided by the statute.

*Sturges*, 27 N.J.L. at 426.

Bankruptcy courts in the District of New Jersey have addressed this issue on a few occasions. Notably, in *In re Loehwing*, the trustee sold property after the sheriff received a writ of execution, set up and advertised a sale. *Dobin v. Wa. Mut. Manasquan., F.A. (In re Loehwing)*, 320 B.R. 281, 283 (Bankr. D.N.J. 2005). The issue in *Loehwing* was whether "satisfaction of a mortgage foreclosure judgment from proceeds of sale, before sheriff has completed his duties, is in nature of 'settlement,' such as will trigger sheriff's right to payment of one-half commission pursuant to N.J. STAT. ANN. § 22A:4–8." *Id.* at 281. In that case, Judge Lyons held that, "a sale of the property by the Chapter 7 Trustee in the bankruptcy case was in fact a "settlement" entitling the sheriff to a commission on the sale." *Id.* at 285. In reaching its conclusion, Judge Lyons relied on the definition of settlement provided in Black's Law Dictionary and New Jersey state law, as interpreted by the court in *Sturges*. Ultimately, the *Loehwing* court reasoned that a "payment or satisfaction of a mortgage" and "anything . . . done between [the parties], by which a sale is rendered unnecessary, . . . must be considered a settlement." *In re Jones*, No. 06-16416, 2008 WL 3833425, at *3 (Bankr. D.N.J. Aug. 13, 2008) (citing *Loehwing*, 320 B.R. 281 at 285-6, n. 3.)

The Trustee cites *In re Bejjani*, *In re Dominguez*, and *In re Jones* in support of her preemption argument. *In re Bejjani*, No. 02–3302, 2003 WL 23967621, (Bankr. D.N.J. September 2, 2003); *In re Dominguez*, No. 05 32129, 2006 WL 4452976, (Bankr. D.N.J. Apr. 7, 2006); *In re Jones*, 2008 WL 3833425. In *Bejjani,* decided by Judge Steckroth prior to

9

*Loehwing*, a debtor in possession and his non-debtor spouse sold property after a writ had been delivered to the sheriff. *Bejjani*, 2003 WL 23967621, at *3-5.[6] The court concluded that the parties' actions did not constitute a settlement for purposes of N.J. STAT. ANN. 22A:4–8. *Id*. at 13. For Judge Steckroth, a settlement under the statute applies only to the situation where the parties settle the action and satisfy the writ of execution absent an actual sale by the sheriff, and the statute does not apply to a bankruptcy court approved sale that occurs after a bankruptcy petition has been filed. *Id*. at 13. The *Bejjani* court saw the commission as an impermissible windfall to the sheriff that would have to be paid from the bankruptcy estate and so the commission was disallowed. As with Judge Lyons in *Loehwing*, this Court is not persuaded by the analysis in *Bejjani* and notes that no opinion by a judge in this multi-judge district is binding on another judge. As will be discussed further, the broad application of the term "settlement," as employed in *Sturges*, supra, encompasses the satisfaction of a foreclosure judgment through a bankruptcy sale prior to the completion of the sheriff's sale. The single exception, as discussed below, is when congressional policy to support a debtor's reorganization efforts demands a contrary result.

In *In re Dominguez*, "the debtor filed her chapter 13 petition just prior to the scheduled foreclosure sale of her residence." *Dominguez*, 2006 WL 4452976, at *1. The debtor then proposed a reinstatement and cure plan, whereby the debtor would reinstate the terms of the mortgage and cure the past due amounts. *Id*. at *3. No sale of the property was ever

---

[6] Unlike the case at bar, in *Bejjani*, the bankruptcy was filed nearly a month before the sheriff posted the property for sale and six weeks before the sheriff advertised the sale. Thus, the sheriff in *Bejjani* sought commissions for services rendered in violation of the automatic stay.

contemplated. *Id*. The court held that to construe the case as a settlement for the purposes of N.J. STAT. ANN. 22A:4-8 was not reasonably within the intent of the statute and would grant the sheriff an impermissible windfall. *Id*. The court reasoned that there was no conduct by any party that resembled a foreclosure sale or brought about the satisfaction of a debt that would entitle the sheriff to a commission and that the automatic stay precluded the sheriff and the secured creditor from proceeding with the sale. *Id*.

Likewise, in *In re Jones*, the debtor filed a chapter 13 petition after the sheriff received a writ of execution. *In re Jones*, 2008 WL 3833425, at *1-2. Instead of a sale, the debtor cured the defaults and obtained a complete reinstatement of the loan. *Id*. Judge Steckroth, revisiting this issue in *Jones*, followed the logic employed in *In re Dominguez* in writing the following:

> The instant matter is factually similar because . . . the Debtor, simply proposed to cure and reinstate her mortgage without sale of the Property. Thus, no settlement as described in N.J. STAT. ANN. 22A:4–8 resulted. To allow a commission each time a mortgage is reinstated in a Chapter 13 proceeding after the writ is delivered to the sheriff would be unreasonable and cause a windfall to the sheriff. Simply put, interpreting N.J. STAT. ANN. 22A:4–8 to include reinstatement of a mortgage in the meaning of "settlement" is counterproductive to the fresh start sought by a debtor through filing for bankruptcy.

*Id*. at 4.

This Court is not persuaded by the cases cited by the Trustee or convinced by the preemption argument. As an initial matter, *Dominguez* and *Jones* were chapter 13 cases and presented facts distinct from those before this Court. In both cases the debtors chose to satisfy their obligations through cure and reinstatement, rather than a sale. The goals of chapter 13 do not always align with those of chapter 7. Chapter 13 was designed to enable a debtor to reorganize and repay his debts over time under a structured rehabilitation plan. Instead of opting for liquidation

11

under chapter 7, a debtor may retain his assets by repaying his creditors under court supervision. In this manner a debtor may save his home. *See In re Gonzalez,* 550 B.R. 711, 725 n.35 (Bankr. E.D. Pa. 2016) (collecting cases); *In re Nepil,* 206 B.R. 72, 75 (Bankr. D.N.J. 1997) ("A main area of expansion [of chapter 13 as compared to chapter XIII under the prior Act] was the Code's recognition of the desire of homeowners to save their homes through Chapter 13."). If the courts were to allow a sheriff's commission in a chapter 13, such practice would impede the objectives of that chapter. Saddling debtors with an additional expense would diminish the viability of chapter 13 as a means of saving one's home. A chapter 7 presents no such concern.

In a chapter 7, the property is liquidated and the commission can be paid from the proceeds of that sale. In this case, the Sheriff's commission will not create a hurdle to rehabilitation because the Debtor's estate is not being reorganized in a chapter 13; rather, the estate is being liquidated under chapter 7. Accordingly, the statutorily mandated commission is not preempted by the bankruptcy code because it does not conflict with the goals of a chapter 7 bankruptcy. "Nothing in the bankruptcy code deprives the Sheriff of his right to payment under state law." *Loehwing*, 320 B.R. at 286. The Court is guided by *Loehwing*, which facts mirror those of the case *sub judice*. The preemption doctrine is inapplicable to the situation here. Thus, satisfaction of a foreclosure judgement from the proceeds of a sale conducted by a chapter 7 trustee, before a sheriff completes his duties, is a "settlement" within the meaning of N.J. STAT. ANN. 22A:4–8. The Sheriff is entitled ½ of the amount of the percentage allowed thereby.[7] As there are no facts in dispute, the Sheriff is likewise entitled to summary judgment as a matter of law.

---

[7] This Court does not make any finding as to the value of the services rendered by the Sheriff. Much like with the chapter 7 trustee's commissions under 11 U.S.C. § 326, or the 20% commission to which assignees for the benefit of

Now the Court must turn its attention to the amount upon which the Sheriff's commission is to be calculated. Again, the facts are not in dispute. The parties simply disagree as to the method of calculation. The Trustee asserts that if any amount is to be used it should be that of the foreclosure judgment ($307,632.33), while the Sheriff contends the Court should use the amount realized through the sale ($1,015,000.00). The Court holds that a sheriff's commission must be calculated on the amount received by the creditor in cancellation of the debt, which in this case is the amounts fixed in the foreclosure judgment.

The purpose of a sheriff's sale is so that a creditor can recoup money on a delinquent debt. During this process, the sheriff effectively serves as an agent of the creditor. New Jersey courts have equated a sheriff conducting a sale to an auctioneer who should look to the seller (creditor) for his compensation, unless advertised differently. *See, e.g.*, *Howard Sav. Bank v. Sutton*, 246 N.J. Super. 482, 485, (Ch. Div. 1990). Therefore, it is only natural that the amount of the sheriff's commission should be based on the amount realized on behalf of the creditor. In 1837, the New Jersey Supreme Court met with a scenario in which the proceeds of a sheriff's sale exceeded the amount due to the creditor. *Sinnickson v. Gale*, 16 N.J.L. 21, 21 (1837). The question before the court was whether the sheriff was entitled to retain a commission based on the amount of sale, or whether he was entitled to a commission based solely on the sum actually

---

creditors are entitled under N.J. STAT. ANN. 2A:19-43, it is the province of the legislative body to fix the commission scheme. *See, e.g.*, *In re Ruiz*, 541 B.R. 892, 897 (B.A.P. 9th Cir. 2015). This Court will not second guess whether the existing commission scheme is reasonable and appropriate.

raised for the creditor. *Id*. The *Sinnickson* court traced the act then in force back to its 1799 predecessor, which contained the following language,

> For serving every execution, if for one hundred Dollars or less, one dollar; and if above that sum, two cents on every dollar, *to be computed on the amount of the debt*, or damages, paid, or secured to the plaintiff.

*Id*. (emphasis added). The court concluded that "the legislature never intended to give the sheriff . . . a commission for sales over and above the amount required to satisfy the execution." *Id*. at 2.

In 2001, the Supreme Court of New Jersey decided this issue once again, and bottomed its decision on *Sinnickson* and *Sturges*, when it wrote, "[i]n the context of the issue before us, *Sinnickson* and *Sturges* demonstrate the longstanding legislative authorization and judicial recognition of the practice of compensating sheriffs for their services in execution sales on the basis of the amount of the underlying obligation or settlement." *BTD-1996 NPC 1 L.L.C. v. 350 Warren L.P.*, 170 N.J. 90, 97 (2001).

This Court sees no reason to anger the spirits of early American jurisprudence or upset well established precedent. The Sheriff's commission should be calculated based on the amount of the foreclosure judgment, which is the amount he initially endeavored to recover on behalf of Manasquan. To rule otherwise, would grant a windfall to the Sheriff that the Court cannot permit. Moreover, since surplus funds, outside of a bankruptcy, would be turned over to the judgment debtor (mortgagor), any commission applied against funds which exceed the amount necessary to satisfy the foreclosure judgment would reduce the available funds to be returned to the judgment debtor. Clearly, as noted above, the Sheriff does not act as an agent or for the

benefit of the judgment debtor, and it would be nonsensical to rub salt into the wound by having the foreclosed party bear the additional costs.

### VI.    Conclusion

For the aforementioned reasons, the Sheriff's Motion for Summary Judgment is denied in part and granted in part. The Sheriff shall receive one-half of the statutory commission, to be paid out of the bankruptcy estate as a part of Manasquan's secured claim, calculated on the amounts due under the foreclosure judgment. The Trustee's Cross Motion for Summary Judgment is denied. Sheriff's counsel is directed to submit a form of judgment.

*Honorable Michael B. Kaplan*
*United States Bankruptcy Judge*

Dated: April 9, 2019